NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

KA 14-373


STATE OF LOUISIANA

VERSUS

CLERFY JAMES TOUCHET


**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 140555, DIV. L
HONORABLE MARILYN CARR CASTLE, DISTRICT JUDGE

**********

**BILLY HOWARD EZELL**
**JUDGE**

**********

Court composed of John D. Saunders, Billy Howard Ezell, and J. David Painter, Judges.


**AFFIRMED.**

**Michael Harson**
**District Attorney**
**William Thomas Babin**
**Assistant District Attorney**
**Fifteenth Judicial District Court**
**P.O. Box 3306**
**Lafayette, LA 70502-3306**
**(337) 232-5170**
**COUNSEL FOR APPELLEE:**
**State of Louisiana**

**Annette Fuller Roach**
**Louisiana Appellate Project**
**P. O. Box 1747**
**Lake Charles, LA 70602-1747**
**(337) 436-2900**
**COUNSEL FOR DEFENDANT/APPELLANT:**
**Clerfy James Touchet**

**Clerfy James Touchet**
**River Bend Det. Center**
**9450 Highway 65 South**
**Lake Providence, LA 71254**
**In Proper Person**

**EZELL, Judge.**

Defendant, Clerfy James Touchet, was indicted on February 6, 2013, for the September 17, 2011 second degree murder of his father, Russell Touchet. On August 22, 2013, Defendant pled guilty to manslaughter, a violation of La.R.S. 14:31. The trial court ordered a presentence investigation report. Defendant was sentenced on November 4, 2013, to thirty years imprisonment at hard labor. Although defense counsel filed a timely notice of appeal asserting that the sentence was excessive, she did not file a motion to reconsider the sentence.

On November 7, 2013, Defendant filed a "Notice of Appeal." Defendant now alleges two assignments of error: 1) Defense counsel rendered ineffective assistance of counsel for failure to file a motion to reconsider the sentence pursuant to La.Code Crim.P. art. 881.1; and 2) The sentence of thirty years at hard labor is constitutionally excessive considering the circumstances of Defendant's case.

For the following reasons, the court finds that Defendant's sentence of thirty years imprisonment is not excessive. Further, it does not seem probable from the facts of the case and in comparison to other similarly situated defendants that the trial court would have reduced the sentence had defense counsel filed a motion to reconsider the sentence. Accordingly, Defendant was not prejudiced by defense counsel's failure to file a motion to reconsider the sentence.

## FACTS

Whereas Defendant pled guilty, the facts of the case are as given at the guilty plea hearing, as follows:

> [O]n or about September 17th of the year 2011, he committed the manslaughter of one Russel Touchet, actions which would be first or second degree murder, but which were committed in sudden passion or heat of blood sufficient to deprive an average person of their self control, and that this happened in the parish of Lafayette.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find no errors patent.

## ASSIGNMENTS OF ERROR

Defendant argues that defense counsel rendered ineffective assistance of counsel for failure to file a motion to reconsider the sentence. He also alleges that the sentence of thirty years imprisonment is excessive under the circumstances of his case. We will address Defendant's two assignments of error together since it must first be determined whether there was a reasonable probability the trial court would have reduced the sentence if defense counsel had filed a motion to reconsider the sentence. Then it must be determined whether the sentence is excessive. *State v. Doucet,* 09-1065 (La.App. 3 Cir. 5/5/10), 36 So.3d 1105, *writ denied,* 10-1195 (La. 12/17/10), 51 So.3d 19.

In *Doucet*, the excessive sentence claim was barred under La.Code Crim.P. art. 881.1. However, it was alleged that defense counsel was ineffective for failure to file a motion to reconsider the sentence; thus, this court addressed the excessiveness of the sentence.

Furthermore:

Failure to file a motion to reconsider does not necessarily constitute ineffective assistance of counsel. Nevertheless, Defendant may have a basis to claim ineffective assistance if he can show a reasonable probability that but for defense counsel's error, his sentence would have been different. *State v. Blake,* 03-1465 (La.App. 3 Cir. 5/5/04), 872 So.2d 602. Furthermore, in *State v. Francis*, 99-208 (La.App. 3 Cir. 10/6/99), 748 So.2d 484, *writ denied,* 00-544 (La.11/13/00), 773 So.2d 156, this court noted that where the record was sufficient to resolve the claim, and the claim was raised by assignment of error on appeal, it may be considered.

*State v. Anderson*, 13-42, pp. 11-12 (La.App. 3 Cir. 7/3/13), 116 So.3d 1045, 1053-54, *writ denied,* 13-1806 (La. 5/16/14), 139 So.3d 1019.

The record before this court is sufficient to resolve Defendant's claim of ineffective assistance of counsel for failure to file a motion to reconsider the sentence and to determine whether the sentence is constitutionally excessive.

Defendant pled guilty to manslaughter. Louisiana Revised Statutes 14:31(B) provides "[w]hoever commits manslaughter shall be imprisoned at hard labor for not more than forty years." Defendant received thirty years, three-fourths of the potential sentence.

In *State v. Angelle*, 13-508, p. 6 (La.App. 3 Cir. 11/6/13), 124 So.3d 1247, 1252, *writ denied*, 13-2845 (La. 5/23/14), 140 So.3d 724, *writ denied*, 13-2892 (La. 8/25/14) ___ So.3d ___, this court discussed the excessiveness of a forty-year sentence imposed on a first felony offender who was charged with second degree murder but pled guilty to manslaughter, as follows:

> The trial court has wide discretion in imposing a sentence. Absent a manifest abuse of that discretion, we will not deem a sentence excessive. *State v. Pyke*, 95-919 (La.App. 3 Cir. 3/6/96), 670 So.2d 713. The appellate court should consider the nature of the crime, the background of the offender, and the sentences imposed for similar crimes in making its determination. *State v. Telsee*, 425 So.2d 1251 (La.1983). A sentence will only be deemed constitutionally excessive if it is grossly out of proportion to the seriousness of the offense. *State v. Dorthey,* 623 So.2d 1276 (La.1993).

At the sentencing hearing, Defendant presented witnesses on his behalf. The first witness to testify was Gladys Touchet, Defendant's sister. She testified that Defendant and his father had a rancorous and violent relationship. She said that her father physically abused her mother, and Defendant would attempt to intervene. She described the trailer where they all lived as a hoarder's house and said there were holes in the floor. Gladys described a time when she and her brother were

younger, her father made her brother break the necks of some baby rabbits because she had handled the babies. She also testified that Defendant often rambled without making sense. However, Gladys also testified that she and Defendant would fight, and he had sexually abused her when they were younger.

Jamie Campbell Touchet, Defendant's ex-wife, testified. She stated that she and Defendant were married in 2002 and had a twelve-year-old daughter. She stated that Defendant and his father often fought, "telling each other things that were just ugly, throwing things." She testified that Defendant's family problems helped to cause her and Defendant's divorce. Jamie testified that Defendant had been physical with her before, and on one occasion, he and his father came to her house and attempted to take their daughter. She stated that when they were living together, Defendant was often paranoid. She said that he had episodes of rambling and telling inconsistent stories. After the divorce, Jamie had asked "him to seek help."

The State also called witnesses. Shirley Louvierre, Defendant's sister, testified but only stated she wanted to know the truth of what happened. She stated that Defendant needed to be punished because he destroyed their family. Shirley further stated she never witnessed "disturbances" between her father and Defendant, but she said that she had left the household in 1999 and did not have a lot of contact with the family after that.

Mary Touchet, the victim's sister-in-law, testified. Her husband was the victim's baby brother. She stated her husband and the victim were close. Mary said that she and her husband often helped the family when they did not have much. She described a time at Christmas before the victim died when she and her husband paid the family's utility bill because they did not have lights or water for

Christmas. Mary said that her husband was too distraught to testify. She said that they had talked the Friday before the shooting, and the victim was elated because he had just gotten a job and could actually pay some bills and put gas in his truck. Mary explained that while she knew the family had problems, she never saw any acts of violence from the victim. She testified that at first "Clerfy was saying that his daddy committed suicide. And, now, he's saying it was an accident."

Laura Marcantel, the victim's sister, stated that she and the victim were close as children, but after he got married, they were not as close. Another sister of the victim, Lois Ann Touchet Lavergne, testified that she never saw the victim exhibit any violence towards his children, at least not in her presence. She described the pain his death caused her family, including the victim's mother who died within eight months after his death without knowing what happened.

Randy Rushing, who was a co-worker with the victim several years prior to the victim's death, testified that the victim was a hard worker and a "best guy." Although he had talked with him a few months prior to his death, the witness testified it had been years since he had spent any time with the victim.

Finally, the victim's wife, Eula Touchet, testified that the victim was mentally and physically abusive. She stated that "he made us live like animals, because he was too lazy to fix the floor." Eula said that Defendant would try to protect her. She said that a neighbor said that "they witnessed him beating my son with a rope, when he was an adult." When asked about the night her husband died, she said she left the house but stated that they "didn't argue. . . . He just told me he didn't want me to go, but I went anyway." She said that he would sometimes go into Defendant's room in the middle of the night, but Defendant never told her what would happen then. She said there was an argument between Defendant and

his father before she left the house. She further stated she never called the police when the victim was abusive towards her.

After brief arguments by defense counsel and the State, the trial court noted that it had received and considered the presentence investigation report and further stated for the record:

> I'm also considering all the testimony that I've heard today. I consider these things in light of Article 894.1 of the Code of Criminal Procedure, and I do make the following findings regarding sentence:
>
> I note that Mr. Touchet does not have any prior felony convictions. But he did use actual violence during the commission of this offense. He used a dangerous weapon - - a firearm - - in the commission of the offense. The victim in this case was his own father.
>
> He is in need of correctional treatment in a custodial environment that can be most effectively provided by commitment to an institution. Manslaughter is a crime of violence. He's not entitled to any type of suspension of sentence. And the Court does believe that mental health treatments would be of benefit to him.

The trial court then sentenced Defendant to thirty years imprisonment at hard labor with the recommendation that he serve his sentence at a facility where he can receive mental health and substance abuse treatments.

Defendant argues that his actions were understandable considering the "years of both verbal and physical abuse." He points out that on the night of the shooting, his mother had left the house to get away from her husband's abuse. He argues that a lesser term of imprisonment with mental health treatments would better serve his needs and that of society.

Like in *Angelle,* 124 So.3d 1247, Defendant was a first time felony offender who was charged with second degree murder but pled guilty to manslaughter. However, the presentence investigation report showed that Defendant has misdemeanor simple battery, domestic abuse battery, and cruelty to animal

6

convictions. The presentence investigation report indicated the cruelty to animal conviction was the result of Defendant shooting his father's dog. The report also indicated that Defendant's father was the victim of the domestic abuse battery conviction.

While there was very little information given regarding the circumstance in which the shooting occurred at the guilty plea and sentencing hearings, the presentence investigation report indicated that the victim was shot three times with a shotgun. One gunshot wound was on the victim's hand, one in his side under his arm, and one in the middle of his chest. Defendant initially reported that his father had committed suicide. Later, he admitted that he had arranged the victim's body on his bed and placed a shotgun beside the body to make it look as if his father had shot himself three times. However, it was immediately apparent to the police that the victim did not kill himself. Defendant then told them some men came into the trailer through the holes in the floor, and while he and his father were defending themselves, the victim was shot twice by the invading men and once by him accidently. We find that regardless of Defendant's mental health issues, his behavior in trying to evade culpability for the killing indicates that he was well aware of the wrongness of his actions.

As noted in *Angelle*:

> Louisiana has long held that maximum sentences for manslaughter are not excessive when there is sufficient evidence to convict the defendant of second degree murder. *State v. Carrier*, 95-1003 (La.App. 3 Cir. 3/6/96), 670 So.2d 794, *writ denied*, 96-881 (La.9/20/96), 679 So.2d 431; *State v. Darby*, 502 So.2d 274 (La.App. 3 Cir.1987). While Defendant is a first time offender and expressed some remorse, the evidence indicates that he walked into a bar and killed the victim in cold blood. These facts are sufficient to support a conviction of second degree murder. *See* La.R.S. 30.1. Additionally, Defendant received the benefit of pleading to the reduced crime of manslaughter, thereby avoiding the more severe penalty of life

7

imprisonment without the benefit of probation, parole, or suspension of sentence that comes with a second degree murder conviction. In light of our past jurisprudence, we conclude that the trial court did not abuse its discretion in sentencing Defendant to forty years at hard labor as such a sentence, under the circumstances of this case, is not disproportionate to the seriousness of the crime.

*Id.* at 1252.

In the current case, it was noted in the presentence investigation report that there was evidence the victim did not die with the first shot as there was blood splatter around the house and on the bottom of his shoes. While Defendant pled guilty to manslaughter, the facts of the case evidenced second degree murder. Accordingly, by pleading guilty to manslaughter, Defendant avoided the possibility of a life sentence. Furthermore, while there was testimony that the victim was abusive towards his son, there was also evidence that Defendant was himself a violent person.

Accordingly, considering all of the above, this court has reviewed Defendant's sentence under a bare excessiveness claim and has not found the sentence excessive under the circumstances of the case. *See State v. Clark*, 06-508 (La.App. 3 Cir. 9/27/06), 940 So.2d 799, *writ denied*, 06-2857 (La. 9/21/07), 964 So.2d 324.

For all of the above reasons, it does not seem reasonably probable from the facts of the case and in comparison to other similarly situated defendants that the trial court would have reduced the sentence had defense counsel filed a motion to reconsider the sentence. Accordingly, Defendant was not prejudiced by defense counsel's failure to file a motion to reconsider the sentence. There is no merit to these assignments of error.

8

## DISPOSITION

The court affirms the thirty-year sentence as imposed by the trial court.

**AFFIRMED**.

This opinion is NOT DESIGNATION FOR PUBLICATION. Uniform Rules—Courts of Appeal. Rule 2–16.3.